COMMODITY FUTURES TRADING COMMISSION, et al., Plaintiffs,

v.

Thomas D. MORSE, et al., Defendants.

No. 83–312C(2).

United States District Court, E.D. Missouri, E.D.

June 14, 1984.

Peter Lumaghi, State of Mo., St. Louis, Mo., Constantine J. Gekas, Regional Counsel, James A. McGurk, Chief Trial Atty., Dennis Robb, Sr. Trial Atty., Commodity Futures Trading Comm., Chicago, Ill., Wesley Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., for plaintiffs.

Joseph F. Devereux, Jr., Thomas M. Utterback, St. Louis, Mo., for defendants.

MEMORANDUM AND ORDER

FILIPPINE, District Judge.

This matter is before the Court for a determination of whether a permanent injunction should issue in the case at bar. On January 6, 1984, all parties agreed to submit this matter to the Court based upon the evidence presented at the hearing on plaintiff's request for a preliminary injunction held February ·17 and 18, 1983. The Court adopts the following Memorandum as its findings of fact and conclusions of law.

Thomas D. Morse, a defendant in the case at bar, is an individual residing and doing business in the State of Missouri. Morse does business as Silver Coin Exchange of St. Louis (Silver Coin), American Precious Metals (APM), and as Stamps-A-Plenty (Stamps). These three entities are wholly owned by Morse and are individual proprietorships. Morse has been registered with the Commodity Futures Trading Commission as an associated person pursuant to Section 4k of the Commodity Exchange Act, 7 U.S.C. § 6k, since June 24, 1981. Silver Coin and Stamps have never been registered with the Commission in any capacity.

Morse individually and through Silver Coin, APM, and Stamps operated an investment business. Three types of investments were offered. (1) Morse offered investments in futures trading through Heinold Commodities, a Chicago commodity broker, and Archer Commodities, a wholly-owned subsidiary of Heinold. Morse and APM acted as the agents of the aforementioned companies. (2) Physical gold and silver were offered for sale. The defendants gave purchasers either the actual gold and silver or evidence of title. (3) Defendants offered investments in what was known as the "spot" program. An investor in the "spot" program would purchase

a controlling interest in gold or silver for a price that was pegged to the daily spot price of gold or silver. The investor could pay 30% of the purchase price to the defendants and agree to pay daily interest on the remaining balance of the purchase price at the current prime interest rate. Morse represented that for every transaction an investor would make, Morse would take an equivalent position in the futures market to hedge against the investor's transaction. For example, if an investor were to purchase 1,000 ounces of silver, Morse indicated he would go to the futures market in silver and buy the same amount. Morse would make his money on the difference between the commission paid by the investor to Morse and the amount Morse paid on the futures market. For example, if an investor purchased $5,000 of silver at $10 per ounce, Morse would earn a commission of $500. Morse would then purchase futures for around $85. As a result, Morse would earn $415 for himself.

The Court finds that the credible evidence shows that Morse, on numerous occasions, did not invest in gold or silver futures to hedge or cover the purchase of gold or silver by investors. Morse instead often took funds invested by his customers, and invested those funds in his own account with Heinold Commodities. These investments by Morse through his personal account were often in commodities other than gold or silver. Moreover, when he did buy futures contracts in gold and silver, he often took positions in the market directly opposite to that of his own customers. Furthermore, the records of Morse indicate that he did not earn the profits reported to his customers. In addition the Court finds that Morse commingled and diverted substantial amounts of customers' funds to other uses such as funding new operations called cashcard/cashnote.

This Court has jurisdiction pursuant to 7 U.S.C. §§ 13a–1, 13a–2. Venue properly lies in this judicial district in that the violations of the Commodity Exchange Act have occurred in this judicial district and because the defendants reside and do business in this district. The above-described activities of Morse and the sole proprietorships owned by him are clear and unmistakable violations of Section 4b of the Commodity Exchange Act, 7 U.S.C. § 6b. Morse cheated and defrauded investors in that he misappropriated funds placed in the spot program by investing funds in the futures market for speculation contrary to the express understanding of the investors.

Morse clearly possessed the required intent to violate 7 U.S.C. § 6b. In order to find a violation "[i]t is enough that [the defendants] acted deliberately knowing that the acts were unauthorized and contrary to instructions. *Haltmier v. CFTC*, 554 F.2d 556, 562 (2d Cir.1977). Morse informed his customers that he would "hedge" their investments on the futures market, and then took the money himself and invested it in other commodities and futures using his personal account. Thus Morse deliberately acted contrary to his representations; his actions were, therefore, unauthorized and contrary to the instructions of his customers.

Defendant Morse argues that the issue of his intent is not before the Court because this Court denied plaintiff's motion for summary judgment. Defendant's argument is spurious. The purpose of a summary judgment is to determine whether or not there exists a genuine issue as to a material fact, Fed.R.Civ.P. 56. This Court denied plaintiff's motion because it failed to establish that there was no genuine issue with respect to Morse's intent. This decision, thus, left open the question of intent for determination by the Court. Subsequent to this Court's action, the parties stipulated that no new evidence was needed beyond that presented to this Court at the preliminary hearing. Based upon this evidence the Court has determined that Morse possessed the necessary intent for there to be a violation of the Commodity Exchange Act.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that defendants Morse, Silver Coin, APM and Stamps, their

officers, directors, subsidiaries, affiliates, agents, servants, employees, successors, or assigns, and persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, and each of them be, and are, hereby permanently enjoined from directly or indirectly:

A. Receiving or disbursing funds, securities or other property from any person for investment in the futures market, in silver and gold bullion or coins or in a program known as the spot program wherein the defendant accepts partial purchase price for such commodities, charges interest on the remaining balance due and hedges such contracts by the purchase of the actual physical commodity or of futures contracts, all in violation of Section 4b of the Act;

B. Dissipating, withdrawing, transferring, removing concealing or disposing of funds, assets or other property of the defendants, whether held in the name of defendants or otherwise, except as to Thomas D. Morse's ordinary and necessary living expenses as approved by the Court upon petition by the defendants;

C. Destroying, mutilating, concealing, altering or disposing of, in any manner, any of the books, records, documents, correspondence, brochures, manuals, or other property of the defendants;

D. Soliciting or accepting new customer accounts or other new deposits of funds from existing customers, and

E. Directing or causing to be executed trades or contracts on behalf of their customers.

IT IS FURTHER ORDERED that Gerhard J. Petzall, Esq., currently the Temporary Equity Receiver, 100 North Broadway, St. Louis, Missouri 63102, is hereby appointed Permanent Equity Receiver of the affairs of Thomas D. Morse, individually, and doing business as Silver Coin, APM and Stamps.

IT IS FURTHER ORDERED that this Court retain jurisdiction of this action in order to implement and carry out the terms of all orders and decrees that may be entered herein and to assume compliance with this Order of Permanent Injunction and other relief.

IT IS FURTHER ORDERED that the defendants are to disgorge to the Permanent Equity Receiver all illegal profits and proceeds, including commissions, benefits and fees, from the operation of their illegal scheme as described herein not heretofore deposited with the Permanent Equity Receiver.